No. 25-3722

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TRANIECE MORGAN, | : | |
|     Plaintiff-Appellant, | : | On Appeal from the |
| | : | United States District Court |
| v. | : | for the Southern District of Ohio |
| | : | |
| OHIO DEPARTMENT OF | : | District Court Case No. |
| REHABILITATION AND CORRECTION, | : | 2:23-CV-3946 |
|     Defendant-Appellee. | : | |
| | : | |

## BRIEF OF APPELLEE

DAVE YOST
Attorney General of Ohio

MATHURA J. SRIDHARAN*
Ohio Solicitor General
 *Counsel of Record
LAYNE H. TIESZEN
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellee*
  *Ohio Department of*
  *Rehabilitation and Correction*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................iii

STATEMENT REGARDING ORAL ARGUMENT ............................................vi

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF THE ISSUES......................................................................2

INTRODUCTION ........................................................................................3

STATEMENT ...............................................................................................4

SUMMARY OF THE ARGUMENT ................................................................ 13

STANDARD OF REVIEW ........................................................................... 15

ARGUMENT............................................................................................... 15

    I.    Morgan's disability-discrimination claims both fail because she did not request an accommodation........................................................................ 16

        A.    Employees must ask for an accommodation to establish a failure-to-accommodate claim and to trigger the employer's duty to engage in an interactive process......................................................................... 16

        B.    Morgan fails to make out a failure-to-accommodate claim because she did not request an accommodation............................................... 18

        C.    Morgan's failure-to-engage-in-the-interactive-process claim fails because Morgan never triggered the Department's duty to engage in an interactive process because she did not ask for an accommodation.................................................................................. 19

    II.    Morgan's contrary argument does not overcome the essential defect in her case—her failure to request an accommodation. ..............................20

    III.    Morgan has not, and cannot now, bring a "regarded as" claim; but even if she had, the district court correctly held that it would not

support her failure-to-accommodate or failure-to-engage-in-the-interactive-process claims. ........................................................................24

CONCLUSION.................................................................................27

CERTIFICATE OF COMPLIANCE...................................................28

CERTIFICATE OF SERVICE ...........................................................29

DESIGNATION OF DISTRICT COURT RECORD............................30

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Baker v. Windsor Republic Doors*,
  414 F.App'x 764 (6th Cir. 2011)................................................................25

*Brumley v. United Parcel Serv., Inc.*,
  909 F.3d 834 (6th Cir. 2018) ..................................................................18

*Cannon v. Jacobs Field Servs. N. Am., Inc.*,
  813 F.3d 586 (5th Cir. 2016) .......................................................... 21, 22

*Gaines v. Runyon*,
  107 F.3d 1171 (6th Cir. 1997) ................................................................18

*Gantt v. Wilson Sporting Goods Co.*,
  143 F.3d 1042 (6th Cir. 1998) ........................................................ 18, 22

*Gruener v. Ohio Cas. Ins. Co.*,
  510 F.3d 661 (6th Cir. 2008) ..................................................................25

*Hostettler v. College of Wooster*,
  895 F.3d 844 (6th Cir. 2018) .........................................................*passim*

*Jackson v. United States Postal Serv.*,
  149 F.4th 656 (6th Cir. 2025) ..........................................................18, 21

*Keith v. Cnty. of Oakland*,
  703 F.3d 918 (6th Cir. 2013).................................................................. 16

*King v. Steward Trumbull Mem'l Hosp., Inc.*,
  30 F.4th 551 (6th Cir. 2022)...........................................13, 17, 18, 25

*Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*,
  974 F.3d 652 (6th Cir. 2020) ..........................................................17, 21

*Kocsis v. Multi-Care Mgmt., Inc.*,
  97 F.3d 876 (6th Cir. 1996)....................................................................18

*Leeds v. Potter*,
  249 F.App'x 442 (6th Cir. 2007) ...........................................................18

*Mahon v. Crowell*,
  295 F.3d 585 (6th Cir. 2002) ................................................................ 25

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*,
  119 F.3d 453 (6th Cir. 1997) ............................................................... 17

*Newberry v. E. Texas State University*,
  161 F.3d 276 (5th Cir. 1998) ............................................................... 26

*Pulsifer v. Westshore Christian Acad.*,
  142 F.4th 859 (6th Cir. 2025) .............................................................. 15

*Root v. Decorative Paint, Inc.*,
  No. 23-3404, 2024 WL 4024426 (6th Cir. Sept. 3, 2024) ........................... 21, 22

*Rorrer v. City of Stow*,
  743 F.3d 1025 (6th Cir. 2014) ............................................................ 13, 20

*Smith v. Henderson*,
  376 F.3d 529 (6th Cir. 2004) ............................................................... 18

*Sykes v. Anderson*,
  625 F.3d 294 (6th Cir. 2010) ............................................................... 22

*Willard v. Potter*,
  264 F.App'x 485 (6th Cir. 2008) ......................................................... 13, 20

*Workman v. Frito-Lay, Inc.*,
  165 F.3d 460 (6th Cir. 1999) ............................................................ 15, 25, 26

*Wurzel v. Whirlpool Corp.*,
  482 F.App'x 1 (6th Cir. 2012) ............................................................. 25

**Statutes**

28 U.S.C. §1291 ................................................................................... 1

28 U.S.C. §1331 ................................................................................... 1

29 U.S.C. §701 ................................................................................... 11

29 U.S.C. §794 ................................................................................ 17, 25

42 U.S.C. §12112 .......................................................................................17, 25

## STATEMENT REGARDING ORAL ARGUMENT

The Ohio Department of Rehabilitation and Correction believes that the briefing sufficiently addresses all relevant issues and oral argument would not assist in the disposition of this case.  *See* Fed. R. App. P. 34(a)(2)(C).  Nevertheless, should the Court request it, the Department stands ready to participate in oral argument.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case under 28 U.S.C. §1331 because a claim under the Rehabilitation Act arises under the laws of the United States. This Court has jurisdiction under 28 U.S.C. §1291 because the district court entered a final decision when it granted the Ohio Department of Rehabilitation and Correction summary judgment.

## STATEMENT OF THE ISSUES

**1.** Can Morgan establish a *prima facie* failure-to-accommodate claim under the Rehabilitation Act without showing that she requested an accommodation?

**2.** Did the Department of Rehabilitation and Correction fail to engage in an interactive process to determine how to accommodate Morgan if she never requested an accommodation?

**3.** Did the district court err by granting the Department of Rehabilitation and Correction summary judgment?

**INTRODUCTION**

Traniece Morgan has a history of transient ischemic attacks ("TIAs")—a blood-flow disorder that can cause stroke-like symptoms. When an independent medical examination concluded that she required modified work duty, possibly because of this history, her employer, Ohio's Department of Rehabilitation and Correction, took her off full work duty and provided her with several options to accommodate her disability. But Morgan disagreed; she insisted that she did not need any accommodations to fully perform her work duties because she was not disabled at all. In fact, her last TIA happened in 2017 and she had sufficient flexibility to take leave for doctors' appointments and follow ups. Eventually, she succeeded in disputing the medical report and was returned to her full work duties. But now she tells a different story: that the Department did not do enough to accommodate her disability, despite protesting to the Department that she never had one in the first place. Both cannot be true.

Morgan brought suit under the Rehabilitation Act against the Department for failure to accommodate her disability and failure to engage in the interactive process to determine the appropriate accommodation. But Morgan's claims cannot succeed because she never requested an accommodation. There can be no failure to accommodate where there is no request to accommodate; and where there is no request to

accommodate, there is no failure to engage in an interactive process to determine how to accommodate. Her change in story confirms this point: Morgan never considered herself disabled, and indeed affirmatively *rejected* any claim of disability, and so had no reason to ask the Department for an accommodation. Her claims thus fail before they can gather momentum.

The district court got it right. This Court should affirm its order granting the Department summary judgment.

## STATEMENT

**1.** Morgan has worked for Ohio's Department of Rehabilitation and Corrections since 1994. Morgan Dep., R.30, PageID#194–95. She continues to work there as a financial associate. *Id.* She has a history of transient ischemic attacks (often called "TIAs" or "mini strokes"). Robinson Decl., R.33-2, PageID#813. Whenever Morgan has a TIA, she cannot perform her full work duties because she needs to go to the hospital. Robinson Decl. Ex. 3, R.33-2, PageID#833. She also needs follow-up evaluations after each TIA every four to six months. *Id.*

In 2014, Morgan requested leave under the Families & Medical Leave Act for any time she had a TIA and for any time she needed a follow-up evaluation after a TIA, and the Department granted it subject to annual renewal. Robinson Decl., R.33-2, PageID#813; Robinson Decl. Ex. 3, R.33-2, PageID#831–33. Despite all this, Morgan

maintained that she could perform her full work duties when she was not actively suffering from a TIA. Morgan Dep., R.30, PageID#262. Other than taking leave for hospitalization and follow-up evaluations, Morgan has never asked to be accommodated for her TIAs. Robinson Decl., R.33-2, PageID#813. The last TIA she could recall was in 2017. Morgan Dep., R.30, PageID#262.

Although Morgan's work performance met expectations in many aspects, her communication with coworkers and supervisors was a problem. Robinson Dep., R.31, PageID#571–72; Robinson Dep. Ex. 18, R.31-1, PageID#765. Her job was "very important within [the Franklin Medical Center, a Department institution], requiring her to speak with staff and co-workers continuously." Robinson Dep. Ex. 18, R.31-1, PageID#765. Morgan's former supervisor Christina Robinson testified that hostility between Morgan and Department staff was "problematic within [the] agency." Robinson Dep., R.31, PageID#471. She testified that, in 2023, Morgan "became increasingly more disruptive" and "unprofessional" and, "[g]iven that [the Department is] a secured environment, it was … concerning." *Id.* Specifically, she was "aggressive" and "hostile" when "communicat[ing] with staff or supervisor," "would challenge staff or not be of assistance, challenge her supervisor," and "was not professional in her communications with staff." *Id.*

Because of the Department's concerns with Morgan's "problematic" conduct, it placed her on paid administrative leave until she received an independent medical examination. *Id.* at PageID#471–72. This examination was necessary "to determine [her] fitness for duty, given the unique requirements of her job and the unique safety and security issues associated" with it because, "[a]s a Financial Associate in a correctional setting, she must be able to communicate effectively and professionally with her co-workers." Heard Decl. Ex. 1, R.33-1, PageID#810. The purpose of the exam was to determine whether Morgan could "perform … [her] essential job functions"—that is, the full duties of her job. Robinson Dep., R.31, PageID#472. Critical to this case, the medical exam was *not* meant to determine the extent of any disability or to identify potential accommodations. *Id.*; Heard Decl. Ex. 1, R.33-1, PageID#810; *contra* Apt. Br.10.

Dr. Michael A. Murphy performed the exam. After reviewing relevant records, conducting psychological testing, and conducting a clinical interview, he determined that Morgan was not able to perform the full duties of her job. Robinson Dep. Ex. 19, R.31-1, PageID#769–77. He specifically concluded that Morgan was impaired such that she would "require modified work activity in order to return to any occupation, including her former job" and that "resumption of her full duties [was] not advised." *Id.* at PageID#776. Having concluded that she was not fit for duty, Dr.

6

Murphy had no reason to recommend further testing on her fitness for duty or to identify any possible accommodations. *Contra* Apt. Br.10.

Dr. Murphy also offered a few thoughts on what the cause of Morgan's impairment and inability to return to full duty might be. For example, he noted that several factors, including Morgan's history of TIAs, increased the likelihood of cerebral vascular issues. Robinson Dep. Ex. 19, R.31-1, PageID#776. And he noted that "[t]he clinical data points to a mild neurocognitive disorder." *Id.* But, recognizing the proper scope of the examination, he could not conclusively determine the precise nature of Morgan's impairment without "further data" like "[n]euroimaging" and "an updated neurological consult." *Id.* In other words, he concluded that she was not fit for full duty but could not be sure why without further testing.

**2.** After Dr. Murphy's report, the Department gave Morgan several options to reduce her work duties, but she rejected them all, insisting that she could return to full duty without accommodations. Specifically, after Dr. Murphy concluded that Morgan could not return to full duty, Morgan and her union representative met with Department officials to discuss next steps. Robinson Decl., R.33-2, PageID#813–14. The Department gave Morgan several options: she could dispute Dr. Murphy's report with a second medical opinion from a doctor that reviewed the report and concluded that she *could* return to full duty; or she could explore state disability-leave

programs, temporary-work programs, employee-assistance programs, or the FMLA; or she could request an accommodation from the Department.  Heard Decl., R.33-1, PageID#805–06; Robinson Decl., R.33-2, PageID#813–14; Robinson Dep., R.31, PageID#588.  With respect to the accommodation option, the Department explained its accommodations policies and gave her an ADA packet that she could complete to request an accommodation.  Heard Decl., R.33-1, PageID#805–06; Robinson Decl., R.33-2, PageID#813–14.  At the end of the meeting, Morgan told the Department officials that she intended to dispute Dr. Murphy's report with a second medical opinion saying that she could return to full duty without any modifications.  Heard Decl., R.33-1, PageID#806; Robinson Decl., R. 33-2, PageID#814.

Morgan followed up by providing medical evidence that she had no problems and no need for any accommodations.  That is, a few days after her meeting with the Department, Morgan presented it with a note from Anthony Michael Williams—a certified nurse practitioner that she had previously seen for her TIAs—stating that she "may return to full duty immediately with no restrictions."  Morgan Dep., R.30, PageID#223–24; Morgan Dep. Ex. D-9, R.30-1, PageID#415.  But the note did not say whether CNP Williams had reviewed Dr. Murphy's medical report before concluding that Morgan could return "immediately with no restrictions."  *See* Morgan Dep. Ex. D-9, R.30-1, PageID#415.

Because it was not clear whether CNP Williams had reviewed Dr. Murphy's report, the Department told Morgan that CNP Williams's note was insufficient to dispute Dr. Murphy's conclusion. *Id.* at PageID#413–14. The Department explained that if she still intended to dispute Dr. Murphy's report with a second opinion that says that she could return to full duty without any modifications, she would need the second opinion to explicitly state that the doctor reviewed Dr. Murphy's report, whether the doctor agrees or disagrees with Dr. Murphy's findings, and explain why. *Id.* In case she no longer wanted to dispute Dr. Murphy's report, the Department emphasized that she could use any of the other options laid out at the previous meeting: she could apply for various disability programs or request an accommodation with a Department-provided ADA packet. *Id.* at PageID#410–12. But until she successfully pursued one of those options, she could not return to work and would be taken off paid administrative leave in the next few days. After that, she would need to use accrued personal time. *Id.* at PageID#412.

The Department did not passively accept Morgan's insistence that she could return to full work duty without accommodations, as it continued to pursue the potential need to accommodate. Over the next several weeks, the Department again clarified what Morgan must do to adequately dispute Dr. Murphy's report, Morgan Dep. Ex. D-10, R.30-1, PageID#429–32, reiterated that she had several other options

9

including state disability programs and requesting an accommodation, *id.* at PageID#432, confirmed that she was eligible for state disability leave benefits, Morgan Dep. Ex. D-11, R.30-1, PageID#440, and explained how Morgan could "initiate th[e] process" for requesting an accommodation, Morgan Dep. Ex. D-10, R.30-1, PageID#432.

But Morgan continued to insist that she did not need any work modification because she was capable of fully performing her job without an accommodation. She eventually presented the Department with a medical opinion from Dr. Allison Monahan stating that she reviewed Dr. Murphy's report and concluded that Morgan "currently does not have any conditions that render her medically disabled" and "may return to work on 11/06/2023." Morgan Dep. Ex. D-12, R.30-1, PageID#444. The Department accepted this opinion as sufficiently disputing Dr. Murphy's report and returned Morgan to full duty without any restrictions on November 6, 2023. Morgan Dep., R.30, PageID#239.

To date, Morgan has not requested any accommodation beyond her FMLA certification—through either an ADA accommodation packet or otherwise. Heard Decl., R.33-1, PageID#806; Robinson Decl., R.33-2, PageID#813; Opinion and Order ("Op."), R.42, PageID#941.

10

**3.** Morgan sued the Department shortly after returning to work. Her sole claim is disability discrimination under the Rehabilitation Act, 29 U.S.C. §701, *et seq.*, for failing to accommodate and failing to engage in the interactive process. Second Am. Compl., R.26, PageID#164; Op., R.42, PageID#936. Morgan claims that the Department discriminated against her when it prevented her from returning to full duty after Dr. Murphy's medical exam. Her basis for that claim is that Dr. Murphy's medical report "triggered a duty" for the Department "to engage in an interactive process … to ascertain the nature and extent of any disability and to further ascertain what [it] could do to reasonably accommodate Ms. Morgan so that she could perform the essential functions of her position," and the Department failed to do so. Second Am. Compl., R.26, PageID#162–64. Morgan seeks "damages in an amount to be proven at trial plus reasonable attorney's [fees] and the costs of this action, plus such other legal and/or equitable relief as [the district court] deems just and reasonable." *Id.* at PageID#164.

After discovery, the Department moved for summary judgment and the district court granted its motion. The court first clarified that although Morgan has a history of TIAs that may render her "actually disabled" under the Rehabilitation Act, her claim was better characterized as one where she is "regarded as" having a disability under the Rehabilitation Act. Op., R.42, PageID#943–44. That is because the

11

Department relied on Dr. Murphy's report—rather than Morgan's history of TIA's and over Morgan's objections—to stop her from returning to full duty. *Id.* at PageID#943–44. Because Morgan's claim is best characterized as a regarded-as claim and because employers are not obligated to provide reasonable accommodations for regarded-as claims under the Rehabilitation Act, the district court concluded, she could not prevail under her failure-to-accommodate claim. *Id.* at PageID#944–46.

The district court further concluded that even if Morgan was "actually disabled" within the meaning of the Act, she could not show that the Department failed to accommodate her because it is "undisputed that she did not request or need an accommodation to perform her job duties." *Id.* at PageID#946. And, the court explained, because an employer's duty to engage in an interactive process to determine a reasonable accommodation is only triggered once an employee requests an accommodation, Morgan could not show that the Department failed to engage in the interactive process, either. *Id.* at PageID#947–48.

Thus, the district court granted the Department summary judgment. *Id.* at PageID#948. Morgan timely appealed to this Court.

12

## SUMMARY OF THE ARGUMENT

**I.** On appeal, Morgan presses two claims: that the Department failed to accommodate her history of TIAs and that it failed to engage in an interactive process to determine how to accommodate her for that disability. It is "undisputed" that Morgan "did not request … an accommodation." Op., R.42, PageID#946. That proves fatal to both claims.

To prevail on a failure-to-accommodate claim, Morgan must demonstrate that she "requested an accommodation." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). She did not. And to show that the Department failed to engage in an interactive process to determine how to accommodate her, Morgan must first establish that she "proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) (emphasis added); *Willard v. Potter*, 264 F.App'x 485, 487–88 (6th Cir. 2008). To establish that, Morgan must have "request[ed] an accommodation" from the Department. *Hostettler v. College of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018). So the failure-to-engage-in-the-interactive-process claim, too, rises and falls on whether she requested an accommodation. Again, she did not.

Her disability-discrimination case therefore fails twice over.

13

**II.** Morgan's contrary argument falls short. It does not overcome her claims' fatal defects: that she failed to request an accommodation. She appears to argue that the Department had a duty to engage in an interactive process to determine how to accommodate her because it was on notice that she *might* need an accommodation in the context of her interactions with the Department. But it is not the *possibility* that an employee could need an accommodation that entitles an employee to an interactive process with her employer, it is her *actual* request for an accommodation that entitles her to that process. *Hostettler*, 895 F.3d at 857. At any rate, her interactions in context with the Department go the other way; she held steady that she did not want or need an accommodation.

**III.** Morgan has not, and cannot now, bring "regarded as" claims of disability discrimination because she premises her claims on an actual disability. That is, throughout her interaction with the Department she appeared to argue that the Department wrongly limited her work because it wrongly regarded her as having a disability (based on Dr. Murphy's conclusion that she required modified work activity). But before Court and the court below, Morgan changed course by arguing that the Department did not do enough to accommodate or try to accommodate her disability—her history of TIAs. So she forfeited any "regarded-as" claim.

14

Nevertheless, the district court entertained the idea that Morgan's claims might be "regarded-as" claims and was correct to conclude that even if they were, Morgan would not be entitled to any accommodation under established circuit law. *See* Op., R.42, PageID#944–46; *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999). So her failure-to-accommodate and failure-to-engage-in-the-interactive-process claims fail anyway.

## STANDARD OF REVIEW

This Court reviews district court orders granting summary judgment *de novo*. *See, e.g.*, *Pulsifer v. Westshore Christian Acad.*, 142 F.4th 859, 861 (6th Cir. 2025).

## ARGUMENT

Morgan presses two claims of disability discrimination under the Rehabilitation Act before this court: that the Department failed to accommodate her history of TIAs and that it failed to engage in the interactive process of selecting a suitable accommodation. She cannot succeed under either claim. Her failure-to-accommodate claim fails because she never requested an accommodation after the independent medical examination. And her failure-to-engage-in-the-interactive-process claim fails because the Department had no duty to engage in an interactive process unless Morgan requested an accommodation. Fatal to both, it is "undisputed" that

15

Morgan did not request an accommodation to perform her job duties. Op., R.42, PageID#946.

One additional point before proceeding further. Morgan also argues in this Court and below that the Department did not comply with its own regulations. Apt. Br.9–10, 18. But, as the court noted below, Morgan has forfeited those claims by dropping them from her Second Amended Complaint. *See* Second Am. Compl., R.26, PageID#161–64. The only claims before this Court are the failure-to-accommodate and failure-to-engage-in-the-interactive-process claims under the Rehabilitation Act. *Accord* Op., R.42, PageID#938–39 n.2.

## I.    Morgan's disability-discrimination claims both fail because she did not request an accommodation.

On appeal, Morgan raises two disability-discrimination claims under the Rehabilitation Act: that the Department failed to accommodate her and that it failed to engage in an interactive process to determine how to accommodate her. Her claims fail because she cannot show what is required to succeed under either claim—that she requested an accommodation.

### A.  Employees must ask for an accommodation to establish a failure-to-accommodate claim and to trigger the employer's duty to engage in an interactive process.

"Claims brought under the Rehabilitation Act are reviewed under the same standards that govern ADA claims." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923

(6th Cir. 2013). That means that "cases construing one statute are instructive in construing the other." *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459–60 (6th Cir. 1997) (quotation omitted). Both statutes make it illegal for an employer to discriminate against an employee because of the employee's disability. 29 U.S.C. §794 (Rehabilitation Act); 42 U.S.C. §12112(a) (ADA). Employees may sue employers under the Rehabilitation Act both for failing to accommodate a disability and for failure to engage in an interactive process to identify an appropriate accommodation. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020).

To show disability discrimination with a failure-to-accommodate claim, an employee must first establish a *prima facie* case for failure to accommodate. That is, she must establish (1) that "she was disabled within the meaning of" the statute; (2) that "she was otherwise qualified for her position, with or without reasonable accommodation"; (3) that her employer "knew or had reason to know about her disability"; (4) that "*she requested an accommodation*"; and (5) that her employer "failed to provide the necessary accommodation." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022) (emphasis added) (quotation omitted). And to show disability discrimination with a failure-to-engage-in-the-interactive-process claim, an employee again must show that *she requested an accommodation* because her

employer does not have "a duty to engage in an interactive process" until "an employee requests an accommodation." *Hostettler v. College of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018).  Thus, both claims require the employee to establish that she requested an accommodation from the employer.

### B. Morgan fails to make out a failure-to-accommodate claim because she did not request an accommodation.

Start with failure to accommodate.  "It is well settled in cases brought under the Rehabilitation Act … that reasonable accommodation is not at issue if the plaintiff has never requested accommodations." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 n.4 (6th Cir. 1998).  That is because the Act requires that employees show that they requested an accommodation from their employers to establish their *prima facie* failure-to-accommodate cases.  *See, e.g.*, *Jackson v. United States Postal Serv.*, 149 F.4th 656, 676–77 (6th Cir. 2025); *King*, 30 F.4th at 560; *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018); *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996).  "While this Court has held that an employee need not use the magic words 'accommodation' or even 'disability,' the request does need to make it clear from the context that it is being made in order to conform with existing medical restrictions." *Leeds v. Potter*, 249 F.App'x 442, 449 (6th Cir. 2007) (citing *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004)).

18

Everybody agrees that Morgan never requested an accommodation.  The Department asserts that "Morgan has never indicated and/or requested that she desired or needed a restricted and/or reduced workload to perform her job duties."  Heard Decl., R.33-1, PageID#806.  And formally, she "has never submitted an ADA packet to the Department to seek an accommodation."  *Id.*; *see also* Robinson Decl., R.33-2, PageID#813; Op., R.42, PageID#941.  All this is, as the court below found, "undisputed."  *Id.* at PageID#946.  Morgan has consistently agreed throughout this litigation—in her complaint (Second Am. Compl., R.26, PageID#162–64), in her briefing below (Br. Opp'n MSJ, R.38, PageID#843–54), and in her briefing in this Court (Apt.Br.1–19)—that she has never asked for an accommodation.

Because she did not request an accommodation, Morgan's failure-to-accommodate claim fails.

> **C. Morgan's failure-to-engage-in-the-interactive-process claim fails because Morgan never triggered the Department's duty to engage in an interactive process because she did not ask for an accommodation.**

Morgan's failure-to-engage-in-the-interactive-process claim fails for the same reason.  It is well established that employers do not have "a duty to engage in an interactive process" until "an employee requests an accommodation."  *Hostettler*, 895 F.3d at 857.  In fact, "failure to engage in the interactive process is only an independent violation of" the Rehabilitation Act or the ADA "if the [employee]

19

establishes a *prima facie* showing that [s]he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) (emphasis added); *Willard v. Potter*, 264 F.App'x 485, 487–88 (6th Cir. 2008). Thus to succeed on her failure-to-engage-in-the-interactive-process claim, Morgan must show that she requested an accommodation.

But because it is "undisputed that [Morgan] did not request or need an accommodation to perform her job duties," Op., R.42, PageID#946, she never triggered the Department's duty to engage in an interactive process with her. So Morgan's failure-to-engage-in-the-interactive-process claim fails before it gets off the ground.

## II.     Morgan's contrary argument does not overcome the essential defect in her case—her failure to request an accommodation.

Morgan's contrary argument falls short. Her argument is not entirely clear because it is infected with her misunderstandings of the independent medical examination and Dr. Murphy's exam report, *see above* 6–7. Although she maintained before the Department that she was not disabled and could return to full duty, now she seems to argue that her history of TIAs rendered her actually disabled, that Dr. Murphy's report gave the Department notice that she *may* need an accommodation, and that the notice triggered a duty to investigate further to determine precisely what accommodation she needed, if any. *See* Apt. Br.11–19. There are two ways to characterize this argument—neither convincing.

20

On the one hand, Morgan appears to argue that the Department had a duty to engage in an interactive process to determine a reasonable accommodation for her as soon as it became aware that she *may* need an accommodation to fully perform her work duties.  On the other, Morgan appears to argue that she constructively requested an accommodation—that is, the context of her interactions with the Department made clear to it that she was requesting an accommodation, even if she did not come out and say so.  Both are wrong.

With the first argument, Morgan is fighting an uphill battle against this Court's precedent.  As explained above, employers do not have "a duty to engage in an interactive process" until "an employee requests an accommodation." *Hostettler*, 895 F.3d at 857.  In other words, it is not the *possibility* that an employee could need an accommodation that entitles her to an interactive process with her employer, it is her *actual* request for an accommodation that entitles her to that process.  The law does not require employers to make guesses. *See, e.g.*, *Jackson*, 149 F.4th at 676–77; *Kirilenko-Ison*, 974 F.3d at 670.

Neither of the cases that Morgan cites—*Root v. Decorative Paint, Inc.*, No. 23-3404, 2024 WL 4024426 (6th Cir. Sept. 3, 2024) and *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586 (5th Cir. 2016)—support her employers-must-guess argument. *See* Apt. Br.17.  Start with the unpublished case.  In *Root*, an employee started

21

having serious breathing problems after starting new work duties. *Root*, 2024 WL 4024426 at *2. She visited a doctor who concluded that the new work duties were causing her breathing problems. *Id.* The employee presented her doctor's conclusions to her employer and specifically asked to return to her old work duties. *Id.* In other words, by asking to return to the prior job, the employee actually requested an accommodation. *Root* is thus distinguishable from this case.

Now consider the out-of-circuit support that Morgan cites. In *Cannon*, the Fifth Circuit held that an employee can be excused from his usual burden to request an accommodation when his "employer was unquestionably aware of [his] disability and had received a report from its own doctor recommending accommodations." 813 F.3d at 595. For one thing, this Court is not bound by this out-of-circuit holding. And for another, this Court has gone the other way. In this circuit, "[i]t is well settled … that reasonable accommodation is not at issue if the plaintiff has never requested accommodations," *Gantt*, 143 F.3d at 1046 n.4. And employers do not have "a duty to engage in an interactive process" until "an employee requests an accommodation," *Hostettler*, 895 F.3d at 857. This panel is bound by that holding. *Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010).

Nor does the record support that Morgan constructively requested an accommodation through her interactions with the Department. The context of her

interactions with the Department all but confirms that she was not requesting an accommodation. She was given several opportunities to ask for an accommodation over several weeks. *See above* 7–10. On many occasions, the Department emphasized that she could request an accommodation, explained to her exactly how to request one with an ADA accommodation packet, and provided her with the ADA packet. Heard Decl., R.33-1, PageID#805–06; Robinson Decl., R.33-2, PageID#813–14; Morgan Dep. Ex. D-9, R. 30-1, PageID#410–12; Morgan Dep. Ex. D-10, R.30-1, PageID#432–33. But Morgan made clear that she did not want an accommodation and repeatedly insisted that she could return to full work duty without one. Heard Decl., R.33-1, PageID#806; Robinson Decl., R.33-2, PageID#814; Morgan Dep., R.30, PageID#223–24; Morgan Dep. Ex. D-9, R.30-1, PageID#415; Morgan Dep. Ex. D-12, R.30-1, PageID#444; *see also above* 7–10. In fact, she provided affirmative evidence from Dr. Monahan that she did "not have any conditions that render her medically disabled" and could "return to work" without any accommodations. Morgan Dep. Ex. D-12, R.30-1, PageID#444. Morgan's interactions with the Department therefore go in the other direction. Morgan did not want an accommodation at all. Rather, she wanted to return back to her full work duties and faulted the Department for considering her disabled.

23

Whichever way this Court looks at it, Morgan's argument falls short. She did not request an accommodation, so she cannot establish that the Department failed to accommodate her or failed to engage in the interactive process with her. And because she cannot establish that the Department failed to accommodate her or failed to engage in the interactive process with her, she has no basis to succeed on either claim. This Court should therefore hold that Morgan's disability-discrimination claims fail because "it remains undisputed that [Morgan] did not request or need an accommodation," Op., R.42, PageID#946, and affirm the district court's order granting the Department summary judgment.

III.    **Morgan has not, and cannot now, bring a "regarded as" claim; but even if she had, the district court correctly held that it would not support her failure-to-accommodate  or  failure-to-engage-in-the-interactive-process claims.**

Morgan's claims below and on appeal are premised on an "actual disability"—that is, she claims that her history of TIAs rendered her actually disabled and that the Department failed to accommodate her disability and failed to engage in an interactive process to determine how to accommodate it. *See* Apt. Br.11–19; Br. Opp'n MSJ, R.38, PageID#850–54; Second Am. Compl., R.26, PageID#162–64. As explained above and as the district court held, her claims fail because she did not request an accommodation. *See above* 16–24; Op. R.42, PageID#946–48. The district court also analyzed her claims as possibly falling into a different category of claims

24

under the Rehabilitation Act, so-called "regarded as" claims. But, even if her claims could be characterized as "regarded-as" claims, the district court correctly concluded that Morgan could not succeed down that path, either.

The Rehabilitation Act, like the ADA, protects disabled employees from discrimination. 29 U.S.C. §794; 42 U.S.C. §12112(a). And just like the ADA, the Act protects nondisabled employees from employers who mistakenly regard them as disabled and unable to fully perform. *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002); *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008). Thus a "regarded-as" claim involves an employer mistakenly limiting an employee's duties for a disability that she does not have, as opposed to an actual-disability claim, which involves an employer refusing to limit an employee's duties for a disability that she does have. *See Gruener*, 510 F.3d at 664–65; *King*, 30 F.4th at 560. Important to this case, this Court has held that employees that "bring[] a 'regarded as' claim" are not "entitled to the benefit of a reasonable accommodation." *Wurzel v. Whirlpool Corp.*, 482 F.App'x 1, 11 n.13 (6th Cir. 2012); *see also Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999); *Baker v. Windsor Republic Doors*, 414 F.App'x 764, 774–76 (6th Cir. 2011).

Below, the district court alternatively characterized Morgan's claims as "regarded-as" claims rather than actual-disability claims. See Op., R.42, PageID#943–

44. It is understandable why the district court did that: Morgan's pre-litigation interactions with the Department were inconsistent with the actual-disability claims she now makes. She maintained at all relevant times that she did not need any accommodations to return to full work duty. Heard Decl., R.33-1, PageID#806; Robinson Decl., R.33-2, PageID#814; Morgan Dep., R.30, PageID#223–24; Morgan Dep. Ex. D-9, R.30-1, PageID#415. And she eventually proved it. Morgan Dep. Ex. D-12, R.30-1, PageID#444. And when offered a menu of possible options for accommodation, Morgan rejected them all. Heard Decl., R.33-1, PageID#805–06; Robinson Decl., R.33-2, PageID#813–14; Robinson Dep., R.31, PageID#588; Morgan Dep. Ex. D-10, R.30-1, PageID#429–32. But the claims she presses in litigation now sound in actual disability—that is, she claims that her history of TIAs is an actual disability that prevented her from doing her full work duties, and the Department erred in failing to accommodate her and failing to start the interactive process. *See* Apt. Br.11–19.

Nevertheless, the district court was correct in its conclusion. Op., R.42, PageID#944–46, 948. Even if her claims were better characterized as regarded-as claims, circuit precedent forecloses her entitlement to any accommodation. *Workman*, 165 F.3d at 467; *see also Newberry v. E. Texas State University*, 161 F.3d 276, 280

26

(5th Cir. 1998). So her failure-to-accommodate and related failure-to-engage-in-the-interactive-process claims fail anyway.

## CONCLUSION

For these reasons, this Court should affirm the district court's order granting the Department summary judgment.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN*
Ohio Solicitor General
 *Counsel of Record*
LAYNE H. TIESZEN
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Appellee*
  *Ohio Department of*
  *Rehabilitation and Correction*

27

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, this brief complies with the type-volume requirements for a principal brief and contains 5,439 words. *See* Fed. R. App. P. 32(a)(7)(B)(i).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN

## DESIGNATION OF DISTRICT COURT RECORD

Appellee, pursuant to Sixth Circuit Rule 30(g), designates the following filings

from the District Court's electronic records:

### *Morgan v. ODRC*, 2:23-CV-3946

| Date Filed | R. No.; PageID# | Document Description |
|---|---|---|
| 11/28/2023 | R. 1; 1–6 | Complaint |
| 9/23/2024 | R. 26; 161–64 | Second Amended Complaint |
| 11/27/2024 | R. 30; 194–95, 223–24, 239, 262 | Traniece Morgan Deposition |
| 11/27/2024 | R. 30-1; 410–15, 429–33, 440, 444 | Exhibits to Traniece Morgan Deposition |
| 11/27/2024 | R. 31; 471–72, 571–72, 588 | Christina Robinson Deposition |
| 11/27/2024 | R. 31-1; 765, 769–77 | Exhibits to Christina Robinson Deposition |
| 12/13/2024 | R. 33-1; 805–06, 810 | Declaration of Warden Malcolm Heard |
| 12/13/2024 | R. 33-2; 813–14, 831–33 | Declaration of Christina Robinson |
| 2/26/2025 | R. 38; 843–54 | Response in Opposition to Motion for Summary Judgment |
| 8/7/2025 | R. 42; 936–48 | Opinion and Order |
| 8/7/2025 | R. 43; 949 | Judgment |
| 9/5/2025 | R. 44; 950 | Notice of Appeal |